## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| GWENDOLYN MCCURDY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 2:13-cv-934-MHT-PWG** |
| | ) | |
| STATE OF ALABAMA | ) | |
| DISABILITY DETERMINATION | ) | |
| SERVICE, | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is an employment discrimination case. This lawsuit is brought by Plaintiff Gwendolyn McCurdy (hereinafter "Plaintiff"). The State of Alabama Disability Determination Service (hereinafter "Defendant") is the only remaining named defendant.[1]

The First Amended Complaint is the operative pleading. (Doc. 32). While not set out in traditional counts, the Complaint purports to state claims arising out of the following statutory provisions: Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1981, by and through the remedial vehicle of 42 U.S.C. § 1983; the Age

---

[1] The individual Defendants named in the original complaint (which was filed *pro se*), as well as Defendant State of Alabama, were dismissed pursuant to this court's order dated March 31, 2014. (Doc. 10).

1

Discrimination in Employment Act (ADEA); and the Americans with Disability Act (ADA).

Before the court is Defendant's motion to dismiss Plaintiff's First Amended Complaint (Doc. 34). For the reasons stated herein, the Magistrate Judge **RECOMMENDS** that Defendant's motion to dismiss is due to be **DENIED** in part and **GRANTED** in part.

## I.    JURISDICTION

Subject matter jurisdiction over Plaintiff's federal claims is conferred by 28 U.S.C. § 1331.  The parties do not dispute venue or personal jurisdiction, and there are adequate allegations in Plaintiff's First Amended Complaint to support both.  On November 20, 2014, this matter was referred to the undersigned by U.S. District Judge Myron H. Thompson for disposition or recommendation on all pretrial matters. (Doc. 28).  *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## II.    PLAINTIFF'S CLAIMS

Plaintiff brings the following claims: § 1981 claims for race-based disparate treatment in job duties, assignments, job evaluations, pay, working conditions, hiring, promotion, discipline, and "other terms and conditions of employment;" a § 1981

claim for hostile work environment; a § 1981 claim for retaliation; Title VII claims

for race, sex, and national origin-based disparate treatment in job duties, assignments,

job evaluations, pay, working conditions, hiring, promotion, discipline, and "other

terms and conditions of employment;" a Title VII claim for hostile work environment;

a Title VII claim for retaliation; an ADEA claim; and an ADA claim.

## III.   BACKGROUND AND FACTS[2]

[2] These are the facts for purposes of ruling on the pending motion to dismiss.  They are gleaned from the allegations in the First Amended Complaint (Doc. 32), the incorporated allegations of the original Complaint (Doc. 1), Plaintiff's November 6, 2012 Equal Employment Opportunity Commission (EEOC) charge (Doc. 34-2), and the EEOC's September 20, 2013 right to sue letter. (Doc. 34-2).

Plaintiff seeks to incorporate the factual allegations of the original, *pro se* complaint (Doc. 1) and Defendant seeks to incorporate arguments from its motion to dismiss the original complaint (Doc. 16) The intent of the order for Plaintiff to file an amended complaint (Doc. 29) was that Plaintiff file an entirely new complaint, not one that incorporated allegations from the previous complaint. However, in light of Eleventh Circuit precedent, the incorporated allegations and arguments will be considered. *See Schreane v. Middlebrooks*, 522 Fed. Appx. 845, 847 (11th Cir. 2013) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading.")(citing *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir.1982)).

The court is permitted to and has taken judicial notice of the EEOC charge and subsequently issued right to sue letter.

"While ordinarily exhibits would not be a part of the record under review for dismissal under Fed.R.Civ.P. 12(b) (6) unless they were attached to the complaint, *see Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999), the EEOC charge is not in dispute, is central to the Complaint and is directly referenced. ... Accordingly, the Court may properly consider it on a motion to dismiss. *Maxcess, Inc. v. Lucent Techs ., Inc.*, 433 F.3d 1337, 1340 n. 3 (11th Cir.2005); *Harris*, 182 F.3d at 802 n. 2; *Brooks v. Blue Cross and Blue Shield of Fla., Inc .*, 116 F.3d 1364, 1369 (11th Cir.1997); *see also Lambert v. Ala. Dept. of Youth Servs.*, 150 F. App'x 990, 991, 992 (11th Cir.2005) (EEOC charge of discrimination attached to motion to dismiss and considered); *U.S.E.E.O.C. v. Stock Bldg. Co.*, No.

Plaintiff is a black female over the age of forty. (Doc. 32 at ¶ 5). She was hired by Defendant in January 2000.[3] (Doc. 32 at ¶7). She was employed as a disability specialist until August 15, 2012, when she was terminated. (Doc. 32 at ¶¶ 7; 14-16). During her employment with Defendant, Plaintiff filed at least one EEOC charge—in 2006—alleging discrimination. (Doc. 34-2).

After Plaintiff's 2012 termination, she filed another EEOC charge. (Doc. 34-2). In this charge, dated November 6, 2012, she alleged as follows:

> I am Black. I was hired by the above named employer on or about September 10, 1998, as a disability specialist. On October 10, 2006, I filed a charge of employment discrimination after I was denied a not promotion [sic]. In December 2011, I was given a Performance Improvement Plan (PIP) and place[d] on probation for a period of at least six (6) months. I was assigned to work for two White supervisors with a history of terminating Black employees. I was given a case load that exceeded the number of cases assigned to similarly situated white employees. My supervisors kept giving me mixed instructions on how I was expected to perform my job. I had 98.6% accuracy rate on the cases that I worked. I was discharged on August 15, 2012, as a probationary employee.

---

205CV306FTM29DNF, 2006 WL 462596, at *1 n. 1 (M.D.Fla. Feb.27, 2006) (considering charge of discrimination attached to the briefs) (unpublished opinion). Alternatively, when considering a motion to dismiss, the Court may take judicial notice of the contents of relevant public records. *Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1280 (11th Cir.1999)."

*Brooks v. CSX Transp., Inc*., 2009 WL 3208708, n.6 (M.D. Fla. Sept. 29, 2009).

[3] Plaintiff's EEOC charge states she was hired in 1998 (Doc. 34-2), as does her first complaint (Doc. 1). For the purposes of this motion to dismiss, it is assumed that she was hired in 2000, as that is what is stated in the First Amended Complaint. (Doc. 32 at ¶7).

Norman Ippolito, Manager, told me I was being terminated due to my lack of production, which I deny.

I believe I was discriminated against because of my race, Black and in retaliation for having filed a previous charge of discrimination in October 2006, in violation of Title VII of the Civil Rights Act of 1964, as amended. I have no knowledge of a similarly situated White employee who is still employed.

(Doc. 34-2).

Plaintiff checked the boxes for "race" and "retaliation." She did not check the boxes for "color," "age," "sex," "disability," "religion," "national origin," "genetic information," or "other." (Doc. 34-2).

On March 9, 2013, just over five months after the EEOC charge was filed and presumably during the pendency of the EEOC investigation, Plaintiff sent a letter to an entity called "EEOC Advocates" or "EEO Advocates," wherein she stated that she wanted "to file a Racial/Sexual harassment complaint against [Defendants] […]." (Doc. 1-1 at p. 3).  In the letter, she outlined the bases for her desire to file a suit. (Doc. 1-1 at pp. 3-6).

The EEOC issued to Plaintiff a right-to-sue letter on September 20, 2013. (Doc. 34-2). Plaintiff initiated this lawsuit on December 20, 2013 by filing a *pro se* complaint. (Doc. 1). Attorney Tyrone Townsend entered an appearance on her behalf on May 27, 2014. (Doc. 21). Pursuant to this court's order, the First Amended

Complaint was filed on December 22, 2014. (Doc. 32). The First Amended Complaint both expands on the EEOC charge and adds additional information not contained in the EEOC charge. A summary of the facts as alleged in the Amended Complaint is set forth *infra*.

Plaintiff alleges that during her tenure with Defendant she performed her duties in an "exemplary and highly competent manner," and received—up until 2010—performance appraisal ratings of "Meets Standards," "Exceeds Standards," and on one occasion, "Consistently Exceeds Standards." (Doc. 32 at ¶¶ 8; 10-12).  In 2010, she received a lower rating.  *Id.*

Plaintiff alleges that in 2011, Beth Jones, Tommy Warren, and Norman Ippolito became her direct supervisors. She received a lower rating on her performance appraisal again that year. (Doc. 32 at ¶¶ 9-12).  In 2012, she also received a low rating. *Id.* Plaintiff complained about these appraisals, and contends that they were retaliatory, and the product of race, sex, and age discrimination. *Id.*

Plaintiff claims that during her 12 years of employment with Defendant, she was never promoted to the position of senior disability specialist, while white and/or male counterparts, or counterparts under the age of 40, received promotions.  (Doc. 32 at ¶¶ 14; 24-26).  She identifies 13 white and/or male and/or younger employees who she contends were "routinely promoted," while she remained in her same

position. (Doc. 32 at ¶¶ 16; 26).

Plaintiff alleges that under the supervision of Beth Jones, she was given a higher case load than comparator employees. (Doc. 32 at ¶ 13).  Plaintiff further alleges that she was subjected to racial epithets and age-based insults at the workplace. She specifically avers that, on several occasions, supervisor Beth Jones called her "dumb nigger" at the conclusion of a conversation and as she was walking away walking away. (Doc. 32 at ¶ 13).  Plaintiff also claims that supervisor Jones told her she was "too old" to be promoted, and referred to her as an "old hag" who should retire because she "wouldn't be promoted anyway."  (Doc. 32 at ¶¶ 15; 24-26). Plaintiff also states that supervisor Warren and an unnamed representative of Defendant discussed intimate details of her protected health information with co-workers and their family members. (Doc. 32 at ¶ 19).

Plaintiff further states that she was "discriminated and retaliated against ... with respect to job duties, and assignments, job evaluations, pay, working conditions, hiring, promotion, hostile work environment, discipline, and other terms and conditions of employment."  (Doc. 32 at ¶ 18).

## IV.    MOTION TO DISMISS STANDARD OF REVIEW[4]

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-

---

[4] Plaintiff refers throughout her brief in opposition to the motion to dismiss to the standard of review for a motion for summary judgment, which has no bearing on the instant inquiry.

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration original). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

## V.   DISCUSSION

### 1.   The § 1981 Claims.

#### A. Eleventh Amendment Immunity

Plaintiff asserts numerous claims arising under § 1981[5], and brings those claims through the remedial vehicle of § 1983.  Defendant argues that the State of Alabama Disability Determination Service is a "branch" of a state agency and as such, is entitled to Eleventh Amendment immunity from suit.[6] (Doc. 34 at p.  2; Doc. 39 at pp. 1-3).  While Plaintiff admits that she states in her First Amended Complaint that Defendant is a state agency, and that Defendant has represented to her that it is a state agency, she contends in her brief in opposition to Defendant's motion to dismiss that Defendant has not established that it is so.[7]

_____

[5] Plaintiff brings the following § 1981 claims: race discrimination in job duties, assignments, job evaluations, pay, working conditions, hiring, promotion, discipline, and "other terms and conditions of employment;" hostile work environment; and retaliation.

[6] Defendant also moves to dismiss the "§1983 claims" on the basis of immunity. 42 U.S.C. § 1983 is not a source of substantive rights, but rather a remedial vehicle through which one may seek redress for violations of federal rights elsewhere conferred. *See Graham v O'Connor*, 490 U.S. 386, 393-394, 109 S. Ct. 1865, 1870 (1989). Plaintiff does not appear to have any discrete claims brought pursuant to § 1983, but for the §1981 claim discussed herein.

[7] Plaintiff argues in her opposition to Defendant's motion to dismiss that Defendant is not entitled to immunity from her Title VII claims on the basis of receipt of federal funds. (Doc. 37 at

The Defendant bears the burden of establishing that it is entitled to Eleventh Amendment Immunity from suit. *See Misener Marine Constr., Inc. v. Ga. Ports Auth.*, 2006 WL 2918607, *1 (11th Cir. 2006)(per curiam)(affirming denial of defendant's motion to dismiss where it "failed to satisfy its burden of establishing Eleventh Amendment Immunity at this procedural juncture.").

The Eleventh Amendment limits the power of federal courts to hear suits instituted by private litigants against a state.  The Amendment itself is quite brief, containing only forty-three words:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., Amend. XI.   Although, by its terms, the Eleventh Amendment does not bar suits against a state in federal court by its own citizens, the Supreme Court has extended its protections to apply in such cases.  *See Hans v. Louisiana,* 134 U.S. 1 (1890); *Manders v. Lee,* 338 F.3d 1304, 1308 n. 8 (11th Cir. 2003) (*en banc*).

As the Eleventh Circuit explained in its *en banc* decision in *Manders v. Lee, supra*, the law is "well-settled that Eleventh Amendment immunity bars suits brought in federal court when an 'arm of the State' is sued."  *Id.* at 1308.   The more difficult

---

p. 5-8).  Defendant clarifies in its reply that it is not asserting the defense of Eleventh Amendment immunity with regard to Plaintiff's Title VII claims. (Doc. 39 at p. 2).

question — whether the entity sued is an arm of the state — "must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.*

To determine whether a defendant, while engaged in the relevant function, acts as an arm of the state, the Eleventh Circuit has set out a four-factor inquiry, taking into account:  (1) how state law defines the entity;  (2) what degree of control the state maintains over the entity;  (3) the source of the entity's funds;  and (4) who bears financial responsibility for judgments entered against the entity.  *See Manders,* 338 F.3d at 1309.

While Defendant briefly states in its motion to dismiss that it is a state agency and is entitled to immunity, Defendant clarifies for the first time in its reply brief that it is a "branch of the State of Alabama Department of Education [...] ."  (Doc. 39 at p. 2). Defendant further argues in its reply brief that it has been "treated as a state agency by this Court in prior precedent" and cites three cases purportedly serving as examples of the same. These cases do not serve Defendant's intended purpose. The first, *Spicer v. Astrue*, 2010 WL 4176313 (M.D. Ala. 2010) did not hold that Defendant is a state agency and certainly did not hold that it was entitled to Eleventh Amendment immunity, as that question was never at issue; rather, in the context of weighing evidence, the court noted that certain evidence authored by one of

12

Defendant's examiners was written by a "state agency reviewer."  The second case, *Alloway v. White*, 2010 WL 4025065 (M.D. Ala. 2010), held that the Department of Education was a state agency immune from suit under the Eleventh Amendment.  It did not hold that Defendant Disability Determination Service, a purported "branch" of the Department of Education, was considered a state agency for the purpose of Eleventh Amendment immunity.  Finally, the third case, *Wright v. Butts*, 953 F. Supp. 1352, 1358 (M.D. Ala. 1996) held that another state agency, the Department of Transportation, was entitled to immunity, and as such is inapplicable to the case at bar. This court has undertaken a brief search of precedent from this state and circuit and has been unable to locate case law definitively holding that Defendant is an arm of the state for purposes of Eleventh Amendment immunity.

Defendant bears the ultimate burden of establishing that it—not the Department of Education—is an arm of the state such that it is entitled to immunity from suit. While Defendant has argued that it is a "branch" of the Department of Education, Defendant has not provided any binding or persuasive support for its position that it, or any branch of the Alabama Department of Education—as opposed to the Alabama Department of Education itself—is a state agency. Defendant has further not shown, even if it is a state agency, that it meets the criteria necessary for Eleventh Amendment immunity. *See Manders,* 338 F.3d at 1309. Defendant's argument is

13

underdeveloped and Defendant has failed to meet its burden at this juncture. Accordingly, Defendant's motion to dismiss the § 1981 claims is denied. Defendant may reassert this argument at a later stage on a more developed factual record[8].

### B.   The substance of the §1981 claims.

Plaintiff brings the following § 1981 claims: race discrimination in job duties, assignments, job evaluations, pay, working conditions, hiring, promotion, discipline, and "other terms and conditions of employment;" hostile work environment; and retaliation.  She brings identical race-based claims under Title VII.  "Section 1981 and Title VII are not coextensive. When Section 1981 is used as a basis for relief parallel to that provided by Title VII, the elements of a Section 1981 claim are identical to the elements of a Title VII claim." *Nash v. Consolidated City of Jacksonville, Duval County, Fla*., 895 F. Supp. 1536, 1554 (M.D. Fla. 1995)(internal citations omitted). *See also Bryant v. Jones*, 575 F.3d 1281, 1296 n. 20 (11th Cir. 2009)(Title VII and Section 1981 are subject to the same burdens of proof and employ the same analytical framework). *See*, *e.g. Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)(same); *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980)("When Section 1981 is used as a parallel basis for relief

---

[8] The denial of the motion to dismiss as to this claim is without prejudice to Defendant's reassertion of the Eleventh Amendment immunity argument at a later stage and on a more developed record. Nothing herein shall be construed as a substantive ruling on whether the Defendant is or is not entitled to Eleventh Amendment immunity.

with Title VII against disparate treatment in employment, its elements appear to be identical to those of section 706 [of Title VII].")(citations omitted).[9]

This Report and Recommendation will address, *infra*, the substance of the race-based Title VII claims for disparate treatment, hostile work environment, and retaliation, with the understanding that the analysis applies equally to the § 1981 race discrimination claims for the same. *See Williams v. Alabama Dept. of Corrections*, 2014 WL 2968457, *3-4 (M.D. Ala. 2014)(analyzing Title VII claims in the opinion with the understanding that the analysis would also apply to the § 1981 claim).[10]

## 2.    The Title VII Claims.

Plaintiff asserts the following Title VII claims: race, sex, and national origin-based [11] disparate treatment in the job duties, assignments, job evaluations, pay,

---

[9] See *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc)(wherein the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.)

[10] While Defendant argues that the § 1981 claims are due to be dismissed on the basis of immunity, Defendant does not specifically address the substance of these claims. Defendant does, however, address the substance of some of the Title VII claims for the same. Insomuch as the claims have the same elements, the Court interprets Defendant's substantive arguments in favor of dismissal of the Title VII claims as equally applicable to the identical § 1981 claims.

[11] Plaintiff also appears to attempt to state a Title VII claim for age discrimination in addition to her ADEA claim. (Doc. 32 at ¶ 9) Defendant likewise discusses her age claim in the section of its reply brief which discusses Plaintiff's Title VII claim. (Doc. 39 at pp. 11-16). Title VII does not prohibit discrimination based on age. *See* 42 U.S.C. § 2000e, *et seq*. To the extent Plaintiff attempts to state a Title VII claim based on age discrimination, it is due to be dismissed. Plaintiff's ADEA claim is discussed *infra* in Section 4 of this Report and Recommendation.

working conditions, hiring, promotion, discipline, and "other terms and conditions of employment;" hostile work environment; and retaliation.

### A. Title VII generally

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Plaintiff is not required to make out a *prima facie* case with regard to each of her Title VI claims. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 152 L.Ed. 2d 1 (2002)("[W]e hold that an employment discrimination plaintiff need not plead a *prima facie* case of discrimination … to survive respondent's motion to dismiss"); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)("a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas*[12] *prima facie* case"); *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1270-71 (11th Cir. 2004)(explaining that *McDonell Douglas* was an evidentiary rather than a pleading standard and that pleading a *McDonell Douglas prima facie* case is not necessary to survive a motion to dismiss).  "[T]he elements [of

---

[12]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

a *prima facie* case] can be a 'helpful guide' in determining whether a claim is plausible at the motion to dismiss phase." *Powell v. Harsco Metal*, 2013 WL 3242759, at *5 (N.D. Ala. 2013)(citing *Bowers v. Bd. Of Regents of Univ. Sys. Of Georgia*, 509 Fed. App'x 906, 910 (11th Cir. 2013)).

Plaintiff is, however, required to plead facts sufficient to race the inference that she was discriminated against. "[C]omplaints alleging discrimination [under Title VII] must still meet the *Iqbal* and *Twombly* 'plausibility' standard." *Foster v. Auburn University Montgomery*, 2011 WL 6140965, *4 (M.D. Ala. Dec. 8, 2011)(citing *Edwards v. Prime, Inc.,* 602 F.3d 1276, 1300 (11th Cir. 2010).

### B.    Exhaustion of administrative remedies

"It is well established that the timely filing of an EEOC charge is a prerequisite to a civil action based on Title VII … and a plaintiff who fails to file a timely charge of discrimination is precluded from bringing a civil action because of a failure to exhaust his or her administrative remedies." *Lett v. Reliable Ruskin*, 2005 WL 2128041, *2 (M.D. Ala. 1995)(citing *Lorance v. AT & T Techs., Inc.*, 490 U.S. 900, 903 n.2, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989)). "The EEOC charge must "contain, among other things, [a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'" *Cobb v. Marshall*, 481 F. Supp. 2d 1248, 1254 (M.D. Ala. 2007)(citing *Alexander v. Fulton County,*

*Georgia*, 207 F.3d 1303, 1332 (11th Cir. 2000)(overruled on unrelated grounds)(quoting 29 C.F.R. § 1601.12(a)(3)).

"A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (internal citation omitted). "As long as the allegations in the judicial complaint and proof are 'reasonably related' to charges in the administrative filing and 'no material differences' between them exist, the court will entertain them." *Wu v. Thomas*, 863 F.2d 1543, 1547(11th Cir. 1989)(citations omitted). "Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate." *Id.* The following of Plaintiff's Title VII claims are barred for failure to exhaust administrative remedies:

### i. Sex-based Title VII claims

Defendant argues that with regard to Plaintiff's sex-based Title VII claims, the motion to dismiss is due to granted for failure to exhaust administrative remedies. (Doc. 34 at p. 5). "The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation." *Alexander*, *supra*, at 1332. There is no evidence on the record as to the construction or meaning the EEOC gave to the charges filed by Plaintiff;

therefore, the EEOC charge will be construed without reference to the EEOC's construction of the same. *See Rolin v. Escambia County Bd. of Educ.*, 752 F. Supp. 1020, 1023 (S.D. Ala. 1990).

Plaintiff checked the boxes for "race" and "retaliation" on her EEOC charge. (Doc. 34-2).  She did not check the box for sex discrimination. Moreover, "[t]he explanation [section] does not allude to or even generally reference sex discrimination [...]." *Cobb, supra*, at 1255.  In the explanation section, she mentioned only race and retaliation. While she affirmatively stated therein that she was "black," no reference was made to her gender, much less the gender of her comparators (to whose race she calls considerable attention).

Plaintiff has not demonstrated that her sex discrimination claim is reasonably related to the claims in her EEOC charge for race discrimination and retaliation or that it amplifies, clarifies, or more clearly focuses those claims.  Consequently, as in *Cobb*, where Plaintiff's EEOC charge referenced only race and age discrimination and never mentioned sex discrimination, Plaintiff's Title VII sex [discrimination] claim is … beyond the scope of her EEOC charge" and represents a new claim for which exhaustion of administrative remedies is required, and is due to be dismissed." *Cobb* at 1255. *See also Daniels v. Mobile Register, Inc.*, 2005 WL 1505856, *11

(S.D. Ala. Jun. 24, 2005)(finding that unexhausted sexual harassment claim was not reasonably related to EEOC charge alleging race discrimination).

Plaintiff admits she did not check the box for sex discrimination, but in her brief in opposition to Defendant's motion to dismiss, Plaintiff argues that the letter that she sent to EEOC Advocates "made … detailed allegations regarding her sex discrimination claims" and that it was sent "prior to the issuance of the right to sue [letter] in this matter."  (Doc. 37 at pp. 15; n.5). She further argues that she does not know what the EEOC investigated, but because she supplied that letter to EEOC Advocates prior to the conclusion of the EEOC investigation, that it is doubtful that she did not supply the same information to the EEOC. Plaintiff offers no precedent for finding that a letter, written to a law firm with no affiliation to the EEOC itself, raises the inference or establishes that the EEOC considered claims contained in the letter as part of its investigation, and this court will not so conclude.[13]

Plaintiff's argument is speculative, conclusory, and ultimately, unpersuasive. It is undisputed that Plaintiff's EEOC charge did not contain allegations of sex discrimination and Plaintiff has not demonstrated that her sex discrimination claim "amplified" or "clarified" the race and retaliation claims in her EEOC charge.

---

[13]  Plaintiff does not argue that the letter to EEOC Advocates was an amendment to her EEOC charge or that she ever provided that letter to the EEOC or her employer. She also does not allege that she ever amended her EEOC charge to contain claims other than those for race discrimination and retaliation.

Plaintiff has likewise not shown that the EEOC considered sex discrimination claims as part of its investigation.[14]

The sex-based Title VII claim is due to be dismissed for Plaintiff's failure to exhaust administrative remedies.

### ii. National origin-based Title VII claims.

Though Plaintiff does not allege in her EEOC charge or her First Amended Complaint that she was discriminated against based on her national origin, and similarly does not include narrative information in her original *pro se* complaint regarding national origin, she checked a box on her form *pro se* complaint for discrimination based on "national origin." Plaintiff has incorporated the factual allegations from her original complaint into her First Amended Complaint. While this claim was not mentioned in the motion to dismiss, it resurfaced in the Plaintiff's brief in opposition to the motion to dismiss and in the Defendant's brief in reply. It is questionable whether there is, in fact, an active claim for national origin-based

---

[14] Defendant discusses at length whether or not the letter sent to EEOC Advocates was verified. Defendant does not set forth the verification requirements or otherwise describe what it means by "verification." Regardless, the court does not reach the question of whether letter was verified in light of its conclusion in this paragraph.

Defendant also discusses the issue of whether allegations/claims contained in the letter and later in the complaint, are time-barred to the extent the letter is considered an amendment to the EEOC charge. Plaintiff does not contend the letter was an amendment; therefore, there is no reason to reach the question of whether claims based thereon are time-barred.

discrimination, or whether Defendant has moved for dismissal of the same. This notwithstanding, out of an abundance of caution, it appears a discussion is due.

For the same reasons articulated *supra* regarding the alleged sex discrimination claim, this claim is due to be dismissed for failure to exhaust administrative remedies. Plaintiff has never alleged her national origin or the national origin of her comparators. Moreover, she had the opportunity to check the box for "national origin" on her EEOC charge, and did not. Furthermore, she has not demonstrated that her national origin discrimination claim is reasonably related to the claims in her EEOC charge for race discrimination and retaliation or that it amplifies, clarifies, or more clearly focuses those claims.  It is due to be dismissed.

### C. Race-based Title VII claims.

### i.      Race-based claims of disparate treatment.

Plaintiff alleges a host of race-based disparate treatment claims. Defendant does not address each of these in turn and rather, makes three general arguments apparently intended to apply to all Title VII claims.

Defendant first responds generally that plaintiff has not established a *prima facie* case of race discrimination for Title VII purposes because she stated in her EEOC charge: "I have no knowledge of a similarly situated White employee who is still employed." (Doc. 34 at p. 10-11). This argument fails to address why each of the

discrete areas of disparate treatment that Plaintiff has alleged (job duties, assignments, evaluations, pay, working conditions, hiring, promotions, discipline, other terms and conditions of employment, and termination) are due to be dismissed. Defendant's argument appears to relate only to Plaintiff's claim that she was terminated based on her race. For a discussion of this argument in the context of her termination claim, see *infra*.

Defendant also generally argues that Plaintiff's Title VII claims fail to meet the plausibility standard articulated *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) because they lack factual content. (Doc. 34 at p. 11). Defendant, again, does not explain why each of the discrete areas of disparate treatment that Plaintiff has alleged are due to be dismissed. This argument also appears to relate only to Plaintiff's claim that she was terminated based on her race.

Finally, Defendant generally argues that Plaintiff is precluded from bringing Title VII claims for which she has not exhausted her administrative remedies. (Doc. 34 at pp. 7-8). While Defendant is clear about its position that Plaintiff failed to exhaust her administrative remedies regarding, for example, her sex-based Title VII claims, Defendant does not specify which, if any, of the discrete areas of Plaintiff's disparate impact claims are subject to dismissal for failure to exhaust administrative

remedies.

Defendant's non-specific arguments regarding the Title VII claims put the court at a distinct disadvantage in evaluating its motion.[15]

### a.    Job duties and assignments.

Plaintiff alleges that Defendant discriminated against her with respect to job duties and assignments.  (Doc. 32 at ¶ 18).  "It is well established that making job assignments along the lines of race or color is forbidden under Title VII and § 1981." *Miller v. Bed, Bath, and Beyond, Inc.*, 185 F. Supp. 2d 1253 (11th Cir. 2002). Plaintiff does not distinguish between the "assignments" she received and the "duties" she was required to perform that were the result of race discrimination, and in her complaint lumps them together. However, Plaintiff alleges in her EEOC charge that she was assigned to work for "two White supervisors with a history of terminating Black employees" and that she was given a case load that "exceeded the number of cases assigned to similarly situated white employees." (Doc. 34-2). She alleges in her complaint that because of her race, she was assigned a higher case load than her comparator employees.   (Doc. 32 at ¶ 12).

---

[15]   Indeed, considerable time was spent attempting to ascertain which of Defendant's general arguments applied to Plaintiff's specific Title VII claims. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). "[T]he onus is on the parties to formulate arguments" rooted in precedent binding on this Court. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations and internal quotation marks omitted).

Plaintiff has alleged enough facts to allow the claims that Defendant intentionally discriminated against her with regard to duties and assignments to proceed to discovery.  Moreover, Plaintiff alleged facts in her EEOC charge to put Defendant on notice of these claims, thus, there was no failure to exhaust her remedies. The motion to dismiss is due to be denied as to these claims.

### b.    Job evaluations.

Plaintiff alleges that Defendant discriminated against her with respect to job evaluations.  (Doc. 32 at ¶ 18). Negative performance reviews or evaluations, without more, are not actionable under the discrimination clause of Title VII.  In *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir. 2001), the Eleventh Circuit stated that a "Title VII discrimination claim … rarely may be predicated merely on employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no tangible impact on the terms, conditions, or privileges of employment."  Id. at 1242. The court further stated:

> "Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace. Expanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit and employer's ability to maintain and improve job performance. [...] Simply put, the loss of prestige or self-esteem felt by an employee who receives

> what he believes to be unwarranted job criticism or performance review will rarely---without more---establish the adverse employment action necessary to pursue a claim under Title VII's anti-discrimination clause."

*Id.* at 1242.

The court then drew a distinction between performance reviews that result in employees being injured in the "tangible terms;" i.e., with regard to the "terms, conditions, or privileges" of employment, and those which do not impact the employee in a material way.  *Id.* at 1245-1246.

Plaintiff alleges that after being assigned to work under certain supervisors whom she alleges had a history of terminating African-Americans, she received negative performance reviews. She claims that these negative performance reviews were without a legitimate basis and were made on the basis of her race. She alleges that she was eventually terminated based on the performance reviews, with her employer attributing her termination to her failing to meet the standards of the job. Termination is a "tangible" injury which impacted Plaintiff in a material way. Plaintiff's allegations are, thus, sufficient to survive Defendant's motion to dismiss. Moreover, Plaintiff alleged facts in her EEOC charge to put Defendant on notice of these claims, thus she did not fail to exhaust her administrative remedies. The motion to dismiss is due to be denied as to this claim.

### c.    Pay.

Plaintiff alleges that Defendant discriminated against her with respect to pay. (Doc. 32 at ¶ 18). In order to state a *prima facie* case for Title VII race-based pay discrimination, Plaintiff must show that she belongs to racial minority, and that the job she occupied was similar to higher-paying jobs occupied by employees outside of her protected class. *Haley-Muhammad v. Colonial Management Group, LP*, 2014 WL 4269133 (N.D. Ala. Aug. 26, 2014)(citing *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992). While Plaintiff is not required---at this stage---to state a *prima facie* case, Plaintiff is required to plead facts necessary to raise the inference that Defendant discriminated against her with regard to pay.

Plaintiff fails to allege facts that would plausibly establish that she was paid less than other disability specialists employed by Defendants, much less those employees outside of her protected class. This claim is due to be dismissed.

To the extent Plaintiff's claim that she was discriminated against with regard to pay is really another way of stating that she was never promoted to senior disability specialist (and thus, never got *more* pay), the claim also fails. "A pay-discrimination claim will not always arise out of a failure-to-promote claim." *McCurdy v. Auburn University*, 2015 WL 2064248, *3 (M.D. Ala. May 4, 2015). It depends on the nature of the failure-to-promote claim. *Id*.

27

A failure-to-promote claim that contends a candidate is qualified to do a job that includes additional responsibilities is different than a failure-to-promote claim that contends a candidate should have been promoted because she is already essentially doing the same job as her comparators who occupy a higher position. The former claim "would focus on a candidate's readiness for the new job." *Id*. The latter claim "would focus on whether her job and her comparators' job were essentially the same, an assessment that would normally encompass a comparison of her responsibilities and pay with her comparators' responsibilities and pay." *Id.* "A reasonable investigator comparing current jobs to determine if they are comparable would look at compensation; a reasonable investigator comparing suitability for a new job may not." *Id.*

Plaintiff's claim falls under the first theory—that she was qualified for a promotion to senior disability specialist, a new job—not that she was already doing the work of a senior disability specialist, yet denied the classification therefor. Thus, given the nature of her failure-to-promote claim, pay is not a necessary or even attendant component of the analysis. A claim for pay discrimination, absent facts to support it, will not be read into Plaintiff's complaint by virtue of her also alleging a claim for failure-to-promote.

Plaintiff's claim is also due to be dismissed for failure to exhaust her

administrative remedies. Plaintiff's EEOC charge does not contain allegations regarding pay and Plaintiff has not demonstrated that her pay discrimination claim "amplified" or "clarified" the race and retaliation claims, including the failure to promote claim, in her EEOC charge.

### d.    Hiring.

Plaintiff alleges that Defendant discriminated against her with respect to hiring. (Doc. 32 at ¶ 18). In order to state a *prima facie* case for a Title VII failure-to-hire claim, Plaintiff must show that she belongs to a protected class, that she applied for and was qualified for the position, that she was rejected, and that after her rejection, the position remained open or was filled by another person outside her protected class. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

Though not required to establish a *prima facie* case, Plaintiff fails to allege facts that would plausibly establish that she was not hired for a position for which she applied, or that after her rejection, the position remained open or was filled by another person outside her protected class. Moreover, Plaintiff's EEOC charge contained no allegations regarding a failure to hire. This claim is due to be dismissed.

To the extent Plaintiff's claim that she was discriminated against with regard to hiring is, again, yet another way of stating that she applied for, but was never

*promoted* to senior disability specialist, see discussion, *infra*, regarding Plaintiff's failure to promote claim.

### e.       Failure-to-promote.

Plaintiff alleges that Defendant discriminated against her with regard to promotions.  (Doc. 32 at ¶ 18).  In order to make out a *prima facie* case for a Title VII failure to promote claim, Plaintiff must show that she was a member of a protected class, that she was qualified for and applied for the promotion, that she was rejected despite her qualifications, and that other equally or less qualified employees who were not members of the protected class were promoted. *Johnson v. Autozone, Inc.*, 768 F. Supp. 2d 1124, 1144 (N.D. Ala. 2011)(citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). Plaintiff alleges that she is African-American and that despite her "exemplary," "highly competent," and "often superior" performance, similarly situated white disability specialists were promoted in her stead.  (Doc. 32 at ¶8, 14, 16). She names thirteen white comparators whom she contends were promoted during her tenure with Defendant.  (Doc. 32 at ¶16).

While Plaintiff does not specifically discuss the necessary qualifications for senior disability specialist or describe what application, if any, was required for such a promotion, she is not required at this stage to establish a *prima facie* case. The allegations (though admittedly spare) are sufficient to survive Defendant's motion to

30

dismiss and allow the failure-to-promote claim to proceed to discovery. Moreover, she clearly exhausted her remedies with regard to this claim. The motion to dismiss is due to be denied as to this claim.

### f.      Working Conditions.

Plaintiff alleges that Defendant discriminated against her with respect to working conditions. (Doc. 32 at ¶ 18). Plaintiff fails to specifically identify the "working conditions" to which she was subjected that she contends amount to a violation of Title VII, or what caused those "working conditions." Absent allegations of facts to raise the inference that she was discriminated against---based on her race---with regard to the conditions of her employment, or facts regarding these alleged "conditions," this claim cannot survive a motion to dismiss.

Because Plaintiff has failed to state plausible claim for discrimination in working conditions, the court need not reach the question of whether she exhausted her administrative remedies with regard to this claim. The motion to dismiss as to this claim is due to be granted.

### g.      Discipline.

Plaintiff alleges that Defendant discriminated against her with regard to discipline. (Doc. 32 at ¶ 18). Plaintiff alleges in her First Amended Complaint that she was subjected to "unjustified discipline" by supervisors (at least one of whom

used racial slurs against her) with a history of terminating African-American employees. She alleges in her EEOC charge that she was placed on a "Performance Improvement Plan (PIP) and placed on probation for six months." (Doc. 34-2). She further argues in her brief in opposition to Defendant's motion to dismiss that she produced "work product at or above the white and male disability specialists" and "other disability specialists who performed below her level of productivity during the times in question were not disciplined in any way and were not terminated like Plaintiff." (Doc. 37 at p. 23). She does not explicitly named comparators who were not subjected to the same discipline she received, but names 13 white employees whom she contends were treated differently than she. Plaintiff is not required, at this stage, to establish a *prima facie* case. She has pled facts that raise the inference that she was discriminated against with regard to discipline, and that the discipline was based on her race. These allegations are sufficient such that the case may proceed to the discovery phase.

As noted *supra*, Plaintiff provided facts regarding the discipline to which she was subjected in her EEOC charge; therefore, Defendant's general argument that she failed to exhaust her administrative remedies does not work in its favor with regard to this claim. As to the discipline claim, the motion to dismiss is due to be denied.

### h.     Other terms and conditions of employment.

Plaintiff alleges that Defendant discriminated against her with regard to "other terms and conditions of employment." While Title VII makes it unlawful for an employer to discriminate against an individual "with respect to his ... terms, conditions, or privileges of employment," there is no discrete claim for discrimination with regard to "other terms and conditions of employment," and the use of the statutory language does not a claim make.  Plaintiff appears to treat the language of the statute as a catch-all. There is no catch-all provision in Title VII, as evidenced by the requirement that a Plaintiff exhaust his or her administrative remedies prior to filing a judicial complaint.

Plaintiff does not explain the  "terms" or "conditions" of her employment to which she is referring.  Plaintiff does not provide factual context for this claim, much less facts that would plausibly establish that Defendant discriminated against her in ways other than those which Plaintiff specifically enumerates. This claim is due to be dismissed.

### i.     Discriminatory termination.

Plaintiff alleges that Defendant discriminated against her when it terminated her.  (Doc. 32 at ¶ 18).  In order to state a claim for discrimination with regard to termination, Plaintiff must show that she was a member of a protected class, was

qualified to do the job, that she was subjected to adverse employment action, and that her employer treated similarly situated employees outside her class more favorably. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). *See also Stimpson v. Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999)("[A] plaintiff must establish (1) the employer's discriminatory animus towards the employee, (2) a discharge or other significant change in the terms or conditions of employment, and (3) a causal link between the two.")

Plaintiff alleges that after having endured being subjected to racial epithets and being called a "dumb nigger" by her supervisor (Doc. 32 at ¶ 13), and receiving negative performance reviews "as a direct result of race ... discrimination" (Doc. 32 at ¶¶ 10-12), that she was terminated. She alleges that her termination was based on her race and that Defendant's assertion that she failed to meet job standards was mere pretext. She argues in her brief in opposition to Defendant's motion to dismiss that she produced "work product at or above the white and male disability specialists" and that these "other disability specialists who performed below her level of productivity during the times in question were not ... terminated like Plaintiff." (Doc. 37 at p. 23). She alleges in her complaint that Defendant "displayed a pervasive pattern and practice of discrimination against ... black ... employees" (Doc. 32 at ¶ 20) and further argues in her brief that there was a "pattern and practice of discrimination and unfair

termination of blacks." (Doc. 37 at p. 14). Though thin, Plaintiff has alleged enough facts to plausibly raise the inference that, in her termination, she suffered intentional race-based discrimination. The claim should proceed to discovery.

Defendant argues that she "established" in her EEOC charge that no white employee was still employed. While Plaintiff's statement in her EEOC charge that she "ha[s] no knowledge of a similarly situated White employee who is still employed" (Doc. 34-2), is, indeed, perplexing, it does not in and of itself establish "facts" or lead to an inevitable conclusion that Plaintiff has failed to state a claim for discriminatory termination. The allegations of the complaint, which refer to at least thirteen white employees of Defendant, are sufficient to allow the claim to proceed to discovery. Defendant's motion to dismiss is denied.

## ii.    Hostile work environment.[16]

Plaintiff alleges that she was subjected to a race-based hostile work environment. Defendant argues that Plaintiff's allegations are insufficient to state a claim for a hostile work environment and that Plaintiff has failed to exhaust her remedies with regard to her claim for the same.[17]

---

[16]  When the complaint is broadly read, Plaintiff appears to allege that there existed a sex-based and age-based hostile work environment, in addition to one based on race. Plaintiff failed to exhaust her remedies with regard to her sex and age-based claims; therefore, for the purpose of this motion to dismiss, this claim is treated as being race-based only.

[17] Defendant raises in a footnote the issues of *res judicata* and plaintiff's claim being time-barred. Defendant argues in passing that Plaintiff's claims of a hostile work environment have already

To prove a *prima facie* case of hostile work environment, plaintiff must establish:  (1) the employee belongs to a class of protected persons; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon the employee's race; (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and created a discriminatorily abusive working environment; and (5) the employer is responsible under a theory of either direct or vicarious liability.  *See Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1507 (M.D. Ala. 1994) (citing *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982)).  The Eleventh Circuit reiterated that, "in order to establish that a workplace constitutes a hostile work environment, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Butler v. Alabama Department of Transportation*, 536 F.3d 1209, 1214 (11th Cir. 2008) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002)) (internal marks omitted).

Plaintiff alleges that she was subjected to the epithet "dumb nigger" by supervisor Beth Jones on "several occasions," but alleges no additional facts to raise

---

been adjudicated by a court in the Northern District of Alabama. Defendant provides no case number and does not identify or explain the claims in that case. Furthermore, Defendant cites no authority and provides no explanation based in law regarding either of these defenses. These arguments are, at best, underdeveloped and they will not be considered.

the inference that she was subjected to a "workplace … permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment" as contemplated by the Eleventh Circuit.  *Butler*, *supra*, at 1214. *See e.g. Cunningham v. Austal, U.S.A., LLC*, 2011 WL 3924185 (isolated and random use of the phrases "stupid nigger," "lazy nigger," and multiple uses of the phrase "ole nigger," even when combined with factors in the workplace, while humiliating, are insufficient to create hostile work environment); *Barrow v. Georgia Pacific Corp.*, 2005 WL 1926420, *3 (11th Cir. Aug. 12, 2005)(occasional use of the words "boy," "nigger," and "black ass," towards plaintiff not sufficiently severe or pervasive to alter conditions of employment).  Cf. *Webb v. Worldwide Flight Service, Inc.,* 407 F.3d 1192, 1193 (11th Cir.2005) (finding evidence sufficient for hostile work environment claim where supervisor referred to plaintiff on a daily basis for two years as a "nigger" and a "monkey," and described him as being "from the tribe"); *E.E.O.C. v. Beverage Canners, Inc.,* 897 F.2d 1067, 1068–69 n. 3 (11th Cir.1990) (indicating that supervisor's racist slurs, including "niggers," "ignorant niggers," and "swahilis," and his statements that "blacks were meant to be slaves" and were of lower intelligence, and "[t]hose niggers out there will not get anywhere in this company" created racially hostile work environment); *Johnson v. Booker T. Washington*

*Broadcasting Service, Inc.,* 234 F.3d 501, 509 (11th Cir.2000) (concluding that "roughly fifteen separate instances of harassment over the course of four months" were actionably pervasive).

Taken as true at the motion to dismiss stage, Plaintiff has alleged that at least one supervisor used abhorrent, repulsive language towards her that is not only inexcusable in the workplace, but in any situation. However, under the law of the Eleventh Circuit, Plaintiff's allegations are not enough to survive Defendant's motion to dismiss.  Because Plaintiff has failed to state plausible claim for a hostile work environment, the court need not reach the question of whether she exhausted her administrative remedies with regard to this claim. The motion to dismiss as to this claim is due to be granted.

### iii.    Retaliation.

Plaintiff alleges that she was retaliated against for filing her earlier (2006) EEOC charge. (Doc. 32 at ¶¶ 11; Doc. 34-2).  She specifically alleges that the time she filed her 2006 charge, supervisors Jones, Norman, and Ippolito were not in the her immediate chain of supervision, but that after she filed the charge, they became her supervisors. She claims that once they became her supervisors, they retaliated against her in the form of giving her low performance reviews, placing her on probation, denying her promotions, and ultimately, terminating her.

Defendant's argues that the time between filing her 2006 EEOC charge and her 2012 termination is too vast to show what it contends is the "very close" temporal proximity required for retaliation claims (Doc. 34 at p. 9). Plaintiff, in response, essentially argues that the supervisors engaged in continuous, ongoing activity from the time she filed her EEOC charge until the time she was terminated, but because they were not her supervisors in the period from 2006 from 2011, their actions could not be considered retaliatory. Plaintiff appears to argue that though the time from 2006 until 2012 is longer than usually allowed for retaliation claims, her claim should proceed because the retaliatory actions were ongoing for that entire time period, regardless of the early job titles of those who later became her supervisors.

While Plaintiff's theory encourages a thoughtful analysis of the intent of the temporal proximity requirement in Title VII cases, Plaintiff offers no precedent to support a conclusion that it is correct and this court will not so hold.

This claim is due to be dismissed for a different reason, which was not raised by Defendant. "Retaliation is a separate violation of Title VII." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).  Section 704(a) of Title VII of the Civil Rights Act of 1964 provides protection for employees who oppose or participate in activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).   Congress thus recognized two predicates for retaliation claims:  one for opposition to discriminatory practices, and another for participation in protected activity.

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter."  . . .  And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citations omitted).  The instant case involves participation.

The Supreme Court recently held that, as to the causation standard for a retaliation claim, a plaintiff must "show that the [adverse employment action] would not have occurred in the absence of — that is, but-for — the defendant's conduct." *University of Texas Southwestern Med. v. Nassar*, 570 U.S. ---, 133 S. Ct. 2517, 2525

(2013).  In other words, a plaintiff has to "establish that his or her protected activity was a but-for cause [and not just a motivating factor] of the alleged adverse employment action by the employer." *Nassar*, 133 S. Ct. at 2534.

Plaintiff's complaint alleges that she suffered adverse employment actions because of her race (and for that matter, her gender, age, and national origin) *and* because of her filing the 2006 EEOC complaint. Indeed, as explained *supra* with regard to her race-based termination claim, Plaintiff alleges that after having endured being subjected to racial epithets and being called a "dumb nigger" by her supervisor (Doc. 32 at ¶ 13), and receiving negative performance reviews "as a direct result of race ... discrimination"  (Doc. 32 at ¶¶ 10-12), that she was terminated. She alleges that her termination was based on her race and that Defendant's assertion that she failed to meet job standards was mere pretext. She argues in her brief in opposition to Defendant's motion to dismiss that she produced "work product at or above the white and male disability specialists" and that these "other disability specialists who performed below her level of productivity during the times in question were not ... terminated like Plaintiff." (Doc. 37 at p. 23).  She alleges in her complaint that Defendant "displayed a pervasive pattern and practice of discrimination against ... black ... employees" (Doc. 32 at ¶ 20) and further argues in her brief that there was

a "pattern and practice of discrimination and unfair termination of blacks." (Doc. 37 at p. 14).

Thus, by the very face of her complaint and the arguments made in opposition to Defendant's motion to dismiss, Plaintiff has demonstrated that her protected activity (filing the 2006 EEOC charge) is not the "but-for" reason, but one of many factors, including race-discrimination, contributing to the cause of her adverse employment actions.  The claim is due to be dismissed.[18]

### 3.    The ADA Claim.

Plaintiff states in her complaint that her claims are brought, among other statutes, pursuant to the ADA. (Doc. 32 at ¶ 3).  Defendant moves to dismiss this claim. Plaintiff clarifies in her brief in opposition to Defendant's motion to dismiss that she did not seek an ADA claim in her EEOC charge and does not seek recovery under the ADA in this lawsuit.  (Doc. 37 at n.1). Because Plaintiff has abandoned this claim, it is due to be dismissed.

---

[18] In light of this conclusion, the court does not reach Defendant's question of temporal proximity between the filing of the 2006 EEOC charge and her termination.

4.    **The ADEA Claim**.

Plaintiff states in her complaint that Defendant's actions violated the ADEA. (Doc. 32 at p. 3). Defendant argues that her age discrimination claims should be dismissed for failure to exhaust her administrative remedies. (Doc. 34 at pp. 5-6).[19]

The law is well-settled that an employee must timely pursue and exhaust her administrative remedies as a precondition to filing an employment discrimination suit under the ADEA. *Harris v. Board of Trustees University of Alabama*, 846 F. Supp. 2d 1223, 1236 (N.D. Ala. 2012)(citing *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005). Like Title VII, "[t]he ADEA requires that an individual exhaust available administrative remedies by filing a charge of unlawful discrimination with the EEOC before filing a lawsuit." *Bost v. Federal Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004). *See, e.g.,* 29 U.S.C. § 626(d)(2); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir.2002). A plaintiff's claims in a subsequent lawsuit are limited by the scope of the EEOC investigation.

> "The EEOC 'should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.' *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.1983). '[J]udicial

---

[19]  Throughout its briefs, Defendant appears to treat the age discrimination claims as if they are part of Plaintiff's Title VII claims. As noted *supra*, the ADEA, not Title VII, applies to age discrimination claims. Defendant's arguments regarding Plaintiff's age discrimination claim are, therefore, construed as offered in support of dismissing Plaintiff's ADEA claim—not her Title VII claim.

claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but [the Eleventh Circuit] has cautioned that allegations of new acts of discrimination are inappropriate.' *Gregory v. Georgia Dep't of Human Resources*, 355 F.3d 1277, 1279–80 (11th Cir.2004) (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir.1989)). Additionally, a plaintiff's judicial complaint is limited by the scope of the EEOC investigation that can 'reasonably be expected to grow out of the charge of discrimination.' *Sanchez v. Standard Brands, Inc*., 431 F.2d 455, 466 (5th Cir.1970)."

*Collins v. Compass Group, Inc.*, 965 F. Supp. 2d 1321 (N.D. Ala. 2013). *See also Wu at* 1548. ("Allegations of new acts of discrimination offered as the essential basis for the requested judicial review, are not appropriate.")

Plaintiff's EEOC charge contains no allegations of age-based discrimination. (Doc. 34-2). Plaintiff checked the boxes for "race" and "retaliation." *Id.* She specifically alleges in the explanation section of her EEOC charge that she was discriminated against based on her race and that she was retaliated against. She did not check the age discrimination box and made no mention of discrimination based on age. She makes no mention of her age or the age of her comparators. (Doc. 34-2).

"This is more than a technical error or simple failure to check the box indicating age discrimination as claimed by Plaintiff." *Scott v. Rite Aid of Georgia, Inc.*, 2012 WL 1409326, *2 (M.D. Ga. April 23, 2012)(holding that where plaintiff only mentioned race and sex discrimination and retaliation in her EEOC charge and never mentioned age discrimination, she was precluded from bringing an ADEA

claim in her subsequent complaint). As in *Scott*, "it appears Plaintiff had no intention of making an age discrimination claim at the time she filed her charges with the EEOC." *Id.* Plaintiff's ADEA claim is a new claim of discrimination separate and apart from the race and retaliation claims she alleged in her EEOC charge, and Plaintiff has not shown that those claims merely amplify or clarify the claims in the EEOC charge. *See Gregory*, *supra*, at 1279-80. Rather, they are new acts of discrimination offered ... for the requested judicial review" and as such, are due to be dismissed.

In her brief in opposition to Defendant's motion to dismiss, Plaintiff again argues that the letter that she sent to EEOC Advocates outlined her age discrimination claim. Plaintiff further argues that she has "not been privy to the contents of the EEOC investigation[,] so there is no way to determine at this time if during that process the investigator looked into age discrimination claims as part of his investigation" and opines that it is "highly doubtful that [Plaintiff] did not supply the same detailed information to the EEOC during the investigative process[,] despite her failing to check the box for age discrimination on the initial complaint form." (Doc. 37 at p. 15). Plaintiff's argument for the same reasons explained *supra*, in section V-2 of this Report and Recommendation.

Notwithstanding the above, this claim is due to be dismissed because Plaintiff cannot satisfy the "but for" requirement of the ADEA.[20] *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S. Ct. 2343 (2009)(holding that the ADEA does not allow authorize a mixed-motives claim); *Culver v. Birmingham Bd. of Educ.*, 646 F. Supp. 2d 1270, 1271-72 (N.D. Ala. 2009)(citing *Gross* and explaining that "a plaintiff who invokes the ADEA has the burden of proving that the fact that he is over 40 years old was the only or the 'but for' reason for the alleged adverse employment action. The only logical inference to be drawn from *Gross* is that an employee cannot claim that age is a motive … and simultaneously claim that there was any other proscribed motive involved. For this reason, the court required [Plaintiff] to choose between his ADEA alternative, which would require him to prove age as the only reason for the adverse employment action, and his Title VII claim"). Plaintiff has alleged Defendant discriminated against her based on her race, sex, and age, and has included in her complaint a §1981 claim and a Title VII claim, in addition to her ADEA claim. This is impermissible, and would dictate dismissal even if the preceding reasons were not present.

---

[20]  This argument was not raised by Defendant.

## VI.   CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that the Defendant's motion to dismiss (Doc. 34) be **DENIED** in part and **GRANTED** in part. The Magistrate Judge recommends that the following claims be dismissed: the Title VII claims based on sex and national origin; the Title VII and § 1981 claims for race-based discrimination as to pay, hiring, working conditions, and other terms and conditions of employment; the Title VII and § 1981 claims for hostile work environment; the Title VII and § 1981 claims for retaliation; the ADA claim; and the ADEA claim.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **September 3, 2015.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District

Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

      **DONE** and **ORDERED** this 13th day of August, 2015.

                        /s/ Paul W. Greene
                        United States Magistrate Judge